UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JENNIFER BOUMA,

                Plaintiff,

      -against-

KALE SALAD, INC. *d/b/a* ZILLOW GONE WILD,

                Defendant.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-05250 (OEM) (RML)

ORELIA E. MERCHANT, United States District Judge:

Plaintiff Jennifer Bouma ("Plaintiff") brings this copyright infringement action against defendant Kale Salad, Inc., doing business as Zillow Gone Wild ("ZGW") ("Defendant"). Specifically, Plaintiff alleges that Defendant, acting with knowledge and reckless disregard, violated the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying her photographs on its website without her authorization, and that she has been damaged as a direct and proximate result of Defendant's infringement. Amended Complaint ("Am. Compl."), ECF 6. Before the Court is Defendant's fully-briefed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.[1] For the following reasons, Defendant's motion is granted in part and denied in part.

## BACKGROUND[2]

Plaintiff is a professional photographer specializing in real estate interiors and exteriors. Am. Compl. ¶ 1. On September 16, 2021, Plaintiff captured eighteen photographs. *Id.* ¶ 6.

---

[1] Defendant's Notice of Motion to Dismiss, ECF 9; Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def.'s Mem."), ECF 9-1; Defendant's declaration and exhibits, ECF 10, 10-1, 10-2; Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Pl.' Opp'n"), ECF 12; and Defendant's Reply ("Def.'s Reply"), ECF 11.

[2] Plaintiff's allegations in the amended complaint are accepted as true for the purpose of deciding this motion to dismiss. *Lin Liu v. Smith*, 515 F. Supp. 3d 193, 195 (S.D.N.Y. 2021).

Plaintiff alleges that, on or about October 15, 2021, Defendant copied and posted a selection of these photographs to ZWG, Defendant's commercial website, and to social media feeds, including Facebook. *Id.* ¶¶ 9, 10, 16. Further, Plaintiff alleges that, "Defendant is not and has never been licensed to use or display [the] Copyrighted Photographs" and Defendant never sought Plaintiff's permission to use them. *Id.* ¶ 17. Plaintiff alleges that Defendant instead obtained the copyrighted photographs from the internet and then posted the copyrighted photographs for its own commercial use. *Id.* ¶ 18.

Plaintiff asserts that the photographs were registered with the United States Copyright Office on January 6, 2022, and that she is "the author and exclusive copyright holder of all copyright rights in and to Copyrighted Photographs." *Id.* ¶¶ 7, 8.

Plaintiff first discovered Defendant's unauthorized use of the copyrighted photographs on or about April 16, 2024. *Id.* ¶ 19. Following her discovery, Plaintiff notified Defendant in writing of its unauthorized use, and up until the filing of this action, the parties were unable to negotiate a reasonable license for the alleged past infringement of the copyrighted photographs. *Id.*

Plaintiff seeks declaratory judgment, permanent injunction, disgorgement of Defendant's alleged profits, actual damages, statutory damages, costs and reasonable attorneys' fees.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

2

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing FED. R. CIV. P. 8).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all facts alleged in the complaint as true, but it need not accept "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Id.* "When reviewing a motion under Rule 12(b)(6), 'the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (citation omitted).

## DISCUSSION

Plaintiff alleges that Defendant infringed upon her copyright by using her photographs on its website without her authorization. *See generally* Am. Compl. To state a claim for copyright infringement, a plaintiff must allege (1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright. *Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 316 (S.D.N.Y. 2023).

Defendant does not dispute that Plaintiff has a valid copyright in the photographs or that it copied the photographs. Rather, in seeking dismissal of Plaintiff's claim, Defendant argues the fair use affirmative defense: that its secondary use of Plaintiff's photographs was fair. Def.'s Mem. at 7-13. Defendant also seeks dismissal of Plaintiff's claims for statutory damages and attorneys' fees, arguing that the amended complaint fails to plead infringement after the copyright was

3

registered, which is a condition precedent to recovery of statutory damages and attorneys' fees under Section 412 of the Copyright Act, 17 U.S.C. § 412.[3] *Id.* at 14-15.

**A.      Whether Defendant's Use of Bouma's Copyrighted Photographs is Fair Use**

Fair use is a complete bar to liability for copyright infringement, and a defendant raising this affirmative defense bears the burden of proving it. *Graham v. Prince*, 265 F. Supp. 3d 366, 376 (S.D.N.Y. 2017); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Grant v. Trump*, 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021); *Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 350 (S.D.N.Y. 2022).

The Copyright Act provides that "the fair use of a copyrighted work, . . . for purposes such as criticism, comment, [or] news reporting [ ] . . . is not an infringement of copyright." 17 U.S.C. § 107. In determining "whether the use made of a work in any particular case is a fair use," courts consider four non-exclusive factors enumerated in 17 U.S.C. § 107:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."

*Campbell*, 510 U.S. at 577; *accord Marano v. Metro, Museum of Art*, 844 F. App'x 436, 438 (2d Cir. 2021).

A defendant is not required to establish that each factor weighs in its favor in order to demonstrate fair use. *NXVIM Corp. v. Ross Inst.*, 364 F.3d 471, 476-77 (2d Cir. 2004). The affirmative defense is properly raised on a motion to dismiss "where the facts necessary to establish

---

[3] A copyright owner may recover for infringement that occurred both before and after registration. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019); *Gong v. Savage*, 23-CV-7355 (AS), 2024 WL 4696128, at *2 (S.D.N.Y. Nov. 4, 2024) (where plaintiff copyright owner registered three years after alleged infringement occurred, plaintiff was not precluded to bring copyright claim, citing to *Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 299).

4

the defense are evident on the face of the complaint." *Whiddon*, 638 F. Supp. 3d at 350 (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). "Accordingly, when 'the only two pieces of evidence needed to decide the question of fair use' are 'the original version' and the allegedly infringing version, it is proper to decide the issue on a motion to dismiss." *Id*. (quoting *Yang v. Mic Network, Inc*., 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019)).

1.  **Purpose and Character of the Use**

The first factor, the purpose and character of the use, is at "the heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). This factor asks the extent to which the secondary work is transformative and whether it is commercial. *Whiddon*, 638 F. Supp. 3d at 350 (citing *NXIVM Corp*., 364 F.3d at 478). "To determine if the secondary work is transformative, the court asks 'whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Grant*, 563 F. Supp. 3d at 284 (citation omitted). Examples of transformative use that the Copyright Act enumerates include secondary works that comment on the original work: namely, "criticism, comment, news reporting, teaching . . ., scholarship, or research." 17 U.S.C. § 107. Where a court determines that the secondary work is "substantially transformative," the other factors such as commercialism become less significant. *Whiddon*, 638 F. Supp. 3d at 350 (quoting *Blanch*, 467 F.3d at 251).

Defendant argues that it has made a transformative use of Plaintiff's photographs because its use and Plaintiff's use serve different purposes. Specifically, Defendant contends that Plaintiff used the photographs for the purpose of "capturing the likeness of a home for sale" whereas Defendant used the photographs on its satirical blog to "pose[] criticism and comment onto

extreme homes."[4] Def.'s Mem. at 8-10. Further, Defendant argues that its blog posts are newsworthy and that "ZGW distinctly highlights in bold lettering the text 'For #zgwcastlefridays, this one comes with your very own dragons! $2,300,000, Monroe, WA 4bd, 3 ba 3,161 sf.' directly above the photographs." Def.'s Mem. at 10 (citing Am. Compl. ¶¶ 11-12, 14-15); Def.'s Reply at 2. Plaintiff counters that "Defendant has not whatsoever transformed the photographs at issue in this case" and that Defendant's secondary use of the photographs neither makes some critical use of, nor change to, the original work. Pl.'s Opp'n at 8, 9.

Defendant's argument misapplies the focus of the transformative use inquiry. While a defendant's secondary use "can be transformative in function or purpose without altering or actually adding to the original work," *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (quotation omitted), Defendant's secondary use does not differ from the copyrighted work's original purpose. *Cf. TCA Television*, 839 F.3d at 183 (finding that the secondary work did not "imbue the [original work] with "any new expression, meaning, or message); *cf. Cariou*, 714 F.3d at 706 (finding that several of the defendant's artworks were transformative because they "manifest[ed] an entirely different aesthetic from [the plaintiff's] photographs"). Plaintiff took interior and exterior photographs for the purpose of capturing the likeness of homes for real estate listings. *See* Am. Compl. ¶ 1. Defendant similarly used these

---

[4] Defendant argues that Plaintiff acknowledges that "the public finds Zillow Gone Wild's commentary newsworthy," because Plaintiff incorporated "several news articles re-posting Zillow Gone Wild's story" in the amended complaint. Def.'s Mem. at 8-10. The Court disagrees with Defendant's position. A better reading of the amended complaint suggests that Plaintiff included those articles to substantiate her claims that Defendant is the source of the infringement and that such proliferation through other websites has impacted the value of her copyright work, *see* Section A.4.

photographs to capture the likeness of homes and included links to the home listings discussed in its blog posts.

Further, "where a secondary work does not obviously comment on or relate back to the original or use the original for a purpose other than that for which it was created, the bare assertion of a 'higher or different artistic use[]' is insufficient to render a work transformative." *Grant*, 563 F. Supp. 3d at 284 (citation omitted). Here, commentary, criticism, or a report *about the images themselves* are notably absent from Defendant's secondary use of the copyrighted photographs. *See Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (finding that defendant's articles failed to "comment on, criticize, or report news *about the Images themselves*") (emphasis in original); *see also BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 406 n.6 (S.D.N.Y. 2016) ("Defendant confuses the situation in which the *photograph* is the story . . . and the scenario present here, in which the *contents* of the photograph are of some public interest . . . .) (emphasis in original). Indeed, instead of providing commentary, criticism, or a report about Plaintiff's copyrighted photographs, ZGW's blog and social media posts are about the *medieval home* itself, which goes to the photographs' *content*. Defendant's secondary use does not add value to Plaintiff's copyrighted photographs, because Defendant simply copied and pasted them to its blog and social media feeds without any alternation. Further, Defendant displayed the photographs on its blog in the same manner as it discovered them on the internet, *see* Am. Compl. ¶ 9, which supports the conclusion that Defendant's secondary use was not transformative. *See Barcroft Media, Ltd.*, 297 F. Supp. 3d at 339 (holding that the defendant's use of the images at issue had no transformative effect, because it displayed images in the same

manner and for the same purpose as originally intended). Thus, Defendant has not demonstrated that its secondary use is transformative.

As noted above, the second part of the first factor asks whether the allegedly infringing work was made for a "commercial purpose." *Graham,* 265 F. Supp. 3d at 382. The concern that the Copyright Act addresses here is "the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work." *Blanch*, 467 F.3d at 253. While the greater economic gains for the alleged infringing party likely means that the first factor favors the copyright holder, the Second Circuit has cautioned that "[t]he more transformative the new work, the less will be the significance" of the commercial sub-factor. *Cariou*, 714 F.3d at 708.

Defendant does not address this sub-factor in its opening brief, but instead addresses this in its reply, arguing that its website does not generate income from the photographs, *see* Def.'s Reply at 4, in response to Plaintiff's argument in opposition that Defendant's use was for a commercial purpose, *see* Pl's Opp'n at 9-10.[5] In any event, drawing all reasonable inferences in Plaintiff's favor, Defendant's secondary use was not transformative, and therefore the role of commercialism as a sub-factor becomes more significant in the fair use analysis. *See Campbell*, 510 U.S. at 580 ("If the [secondary work] has no critical bearing on the substance or style of the original composition . . . the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger."); *see also BWP Media USA, Inc.*, 196 F. Supp. 3d 395 (citing *Blanch*, 467 F.3d at 254)

---

[5] This is sufficient ground to not consider Defendant's argument on this sub-factor at all, as it is waived. *Cf. JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (observing that arguments not made in an opening brief are deemed abandoned); *Castro v. Holder*, 597 F.3d 93, 95-96 n. 2 (2d Cir. 2010) ("We will not consider an argument raised for the first time in a reply brief").

(finding that "where a defendant's use merely 'supersedes the objects' of the original, the commercial nature becomes more relevant").

"The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row v. Nation Enters.*, 471 U.S. 539, 562 (1985). Plaintiff has plausibly alleged that Defendant benefited from its use of the photographs by gaining more traction on its website and by the fact that other websites reposted the photographs using hotlinks to the ZGW website without having to pay a licensing fee. Am. Compl. ¶¶ 13-15. This may be sufficient to find Defendant's use commercial. *See Grant*, 563 F. Supp. 3d at 287 (reasoning that there is a "well-established market for music licensing, but the defendants sought to gain an advantage by using Grant's popular song without paying Grant the customary licensing fee. Accordingly, the video's use of Electric Avenue appears to be commercial); *id.* (discussing *Henly v. DeVore*, 733 F. Supp. 3d 1144 (C.D. Cal. 2010), where court found defendants' campaign videos commercial in nature because they "stood to gain publicity" from their use of the copyright music without paying licensing fees). Defendant counters that its website does not generate income and therefore its use was not commercial in nature. *See* Def.'s Reply at 9. At this motion to dismiss stage, the Court is unable to "gauge the financial implications of the defendants' use of the copyrighted materials . . ., but the possibility of commercial advantage cannot be excluded at this point." *Grant*, 563 F. Supp. 3d at 287. This is particularly the case "in light of the instruction from the Second Circuit Court of Appeals that 'the profit/non-profit distinction is context specific, not dollar dominated.'" *Id.* (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989). Thus, because the Court cannot rule out that Defendant's alleged non-transformative use was not commercial in nature at this stage, this factor does not weigh in favor of fair use.

### 2. Nature of the Copyrighted Work

The second fair use factor directs courts to consider the "nature of the copyrighted work." 17 U.S.C. § 107. This factor "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google*, 804 F.3d 202, 220 (2nd Cir. 2015). It considers whether the original work is creative versus factual and unpublished versus published, with copyright protections applying more broadly to creative and unpublished works and with greater leeway being allowed to a claim for fair use where the work is factual or informational. *Campbell*, 510 U.S. at 586 (creative or expressive works are closer to the "core" of intended copyright protection, while factual or previously published works are entitled to thinner copyright protection).

Defendant argues that the nature of the photographs favors fair use: that Plaintiff's photographs are factual in nature because they were taken for the purpose of listing homes for potential buyers and that the photographs are published for anyone to see on the Zillow website, whereas its use of the photographs on its blog was a commentary "on an extreme home." Def.'s Mem. at 11. Plaintiff counters that her photographs are creative and whether they "'remain[] published is irrelevant to the discussion of fair use.'" Pl.'s Opp'n at 12 (citation omitted). Plaintiff contends that the photographs are "undoubtedly creative and expressive works," because they "are not just mere snapshots of a space;" they involve "numerous creative choices[,] including timing, lighting, angle, composition, and others" and as such they "are not conventional shots of the house depicted in the images." *Id.* (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120 (9th Cir. 2018)).

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that the second factor favors neither party. On one hand, the photographs involved some element of creative expression reflecting Plaintiff's framing choices. "Although photographs are often factual or informational in nature, the art of photography has generally been deemed sufficiently creative to make the

second fair use factor weigh in favor of photographer-plaintiffs." *Hudson Furniture, Inc. v. Mizrahi*, 20-CV-04891, 2023 WL 6214908, at *14 (S.D.N.Y. Sept. 25, 2023) (citation omitted). On the other hand, Plaintiff's photographs purport to depict reality—that is, showcasing the medieval homes as they are for the purpose of attracting potential buyers—and there is no dispute that the photographs are published and publicly available. While a finding that the original work is unpublished cuts against fair use, "the converse is not necessarily true"—"the fact that a work is published does not mean that the scope of fair use is per se broader." *Grant*, 563 F. Supp. 3d at 288. Here, given the prior publication of the photographs, the nature of the photographs does not favor strongly for or against fair use. *Nicklen v. Sinclair Broadcast Grp., Inc.*, 551 F. Supp. 3d 188, 197 (S.D.N.Y. 2021) (finding favor does not favor strongly for or against fair use where the videography reflected plaintiff's artistic choices while simultaneously depicting reality and was publicly available). Thus, this factor in isolation is assigned limited weight in the overall fair use determination. *See Authors Guild*, 804 F.3d at 220.

3. **Amount and Substantiality of the Portion Used**

The third fair use factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. This factor has both quantitative and qualitative components: the quantitative inquiry asks "whether the secondary use 'employs more of the copyrighted work than is necessary,'" while the qualitative inquiry concerns "'whether the use was excessive in relation to any valid purposes asserted under the first factor.'" *Brown v. Netflix,* 462 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (quoting *HathiTrust*, 755 F.3d at 96). "The clear implication of the third factor is that a finding of fair use is more likely when small amounts, or less important [portions], are copied than when the copying is extensive, or encompasses the most important parts of the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir.

2015). Conversely, "the factor favors copyright holders where the portion used by the alleged infringer is a significant percentage of the copyrighted work, or where the portion used is 'essentially the heart of' the copyrighted work." *NXIVM Corp.*, 364 F.3d at 480 (quoting *Harper & Row,* 471 U.S. at 565).

Defendant argues that this factor weighs in its favor because the amended complaint alleges that Defendant used only three of the eighteen photographs that were registered, and therefore its use was a small portion of Plaintiff's copyrighted work. Def.'s Mem. at 13. Further, Defendant argues that it only used "the amount and specific photographs" necessary to further its transformative purposes of satirically commenting on the medieval nature of the homes. *Id.*

However, the quantitative inquiry does not concern *how many* copyrighted photographs it used, but rather the proportion of the original work used in the secondary use. *See Mathieson v. Associated Press*, 90-CV-6945 (LMM), 1992 WL 164447, at *7 (S.D.N.Y. June 25, 1992) (citations omitted) ("The test of substantiality is not how much of the allegedly infringing work was taken from the copyrighted material, but rather how much of the copyrighted material was taken by the infringing work."). Apart from the de minimis and immaterial cropping, Defendant used each photograph in its entirety. *See Golden v. Michael Grecco Prods., Inc.*, 524 F.Supp.3d 52, 63 (E.D.N.Y. 2021) ("Because [defendant] used the entire image, unaltered, this factor clearly favors [plaintiff]."); *Hudson Furniture, Inc.,* 2023 WL 6214908, at * 14 (finding third factor favored plaintiff because defendants "did little more than reproduce [p]laintiff's images on its website"); *see also Hirsch v. CBS Broad. Inc.*, 17-CV-1860 (PAE), 2017 WL 3393845, at *7 (S.D.N.Y. Aug. 4, 2017) (denying a fair use defense, where defendant "simply reproduced a substantial proportion of the Photo," and inserted it into its secondary use); *cf. Graham*, 265 F.

Supp. 3d at 383 (finding that "[v]erbatim copying of an entire copyrighted work militates against a finding of fair use").

Given that at this stage, drawing all reasonable inferences in Plaintiff's favor, Defendant has not shown that its use was transformative, the qualitative inquiry weighs against a finding of fair use. *Cf. Cariou*, 714 F.3d at 710 (when the work is transformative, "the secondary use must be [permitted] to conjure up at least enough of the original to fulfill its transformative purpose"); *see e.g. Whiddon*, 638 F. Supp. 3d at 354 (finding that the defendant's copying of original photographs in their entirety was permissible for the secondary use's transformative purpose).

Because Plaintiff has sufficiently plead that Defendant's use of the photographs is both quantitatively and qualitative excessive, the third factor weighs against a finding of fair use.

### 4. Effect of the Use on the Market

Finally, the fourth enumerated factor in the fair use inquiry is "the effect of the [secondary] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. Defendant argues that its secondary use has no impact on the market for Plaintiff's photographs because Plaintiff's potential market is limited to real estate market, that "[ZGW] is not a competition photographer or in a competing industry," and that its "use is not detracting from Plaintiff's ability to market her work" but asserts that "[ZGW] showcased [Plaintiff's] photographs and may have encouraged new clients for Plaintiff." Def.'s Mem. at 14.

The fourth factor asks courts to "evaluate the economic impact of the allegedly infringing use upon the copyright owner," specifically "whether [Defendant is] offering a market substitute for the original." *NXIVM Corp.*, 364 F.3d at 481; Pl.'s Opp'n at 20 (arguing that under *Campbell*, the "the key inquiry under the fourth factor is whether the defendant's version of the photo can serve as a 'market substitute' for the original"). The Second Circuit has explained that

13

> The focus here is on whether defendants are offering a market substitute for the original.... [O]ur concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work.

*NXIVM Corp.*, 364 F.3d at 481-82. Thus, the relevant inquiry is "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 1018).

This factor weighs in Plaintiff's favor. While Defendant is correct that the amended complaint has not pleaded facts regarding the existence of a market for Plaintiff's photographs or any usurpation of that market by Defendant's alleged infringement, it is irrelevant whether Plaintiff has pleaded market usurpation because Defendant bears the burden of proving fair use. *Hayden v. Koons*, 21-CV-10249 (LGS), 2022 WL 2819364, at *5 (S.D.N.Y. July 18, 2022) (noting that plaintiff is not required to plead market usurpation "with the aim of negative the affirmative defense"); *accord McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 609 (S.D.N.Y. 2020) (noting that "it is irrelevant whether Plaintiff has pleaded market usurpation" because "the burden of proving fair use is Defendant's").

Further, because Defendant's use was commercial and nothing more than a duplication of Plaintiff's photographs—as opposed to being a transformative use, *see supra*, at 3-7—there is a presumption of market harm. *Campbell*, 510 U.S. at 591 (finding a presumption of market harm "when a commercial use amounts to mere duplication of the entirety of an original"); *see Sands v. What's Trending, Inc.*, 20-CV-2735 (GBD) (KHP), 2021 WL 694382, at 4 (S.D.N.Y. Feb. 23, 2021) (finding that because defendant's use was non-transformative and for commercial purposes, a presumption of market harm applies); *Hudson Furniture, Inc.*, 2023 WL 6214908, at *14 (fourth

14

factor favored plaintiff because defendants' use "was both commercial and a mere duplication"). In light of this presumption and in the absence of countervailing arguments in favor of Defendant, the Court finds that Defendant has not met its burden in proving this factor.

Because Plaintiff has alleged a plausible claim for copyright infringement and Defendant has failed to successfully raise a fair use affirmative defense as a matter of law, Defendant's motion to dismiss Plaintiff's copyright infringement claim is denied. *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) (denying motion to dismiss where plaintiff plausibly alleged copyright infringement claim and defendants did not prove burden of fair use affirmative defense).

**B.     Whether Plaintiff Is Entitled to Statutory Damages and Attorneys' Fees**

Defendant seeks dismissal of Plaintiff's claims for statutory damages and attorneys' fees, arguing that the first allegedly infringing post occurred five months before Plaintiff registered her copyright. Plaintiff has not responded to Defendant's argument here. Plaintiff was represented by counsel and on submission of the briefs had opportunity to raise arguments in response but did not, and thus has waived her opposition to it. *Goldblatt v. New York Inst. of Tech.*, 18-CV-00265 (DRH) (ARL), 2020 WL 5027150, at *8 (E.D.N.Y. Aug. 25, 2020); *Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by [plaintiff] when she failed to oppose them in her opposition to [defendant's] motion to dismiss."); *cf. Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (plaintiff failed to raise argument in in his opposition to summary judgment and "[t]hus, th[e] argument has been waived"). Even if Plaintiff had responded in opposition, Defendant would nonetheless prevail on the merits because the Copyright Act's "bright-line" rule on this issue.

Pursuant to the Copyright Act, a plaintiff may seek to recover actual damages, infringer's profits, statutory damages, and attorneys' fees and costs. 17 U.S.C. §§ 504(a), 504(c), 505.

However, Section 412 of the Copyright Act "imposes a bright-line rule that precludes recovery of statutory damages and attorneys' fees where the first act of infringement . . . occurred prior to the work's copyright registration," even if that infringement remains "ongoing" after registration. *Fischer v. Forrest*, 286 F. Supp.3d 590, 602 (S.D.N.Y. 2018) (based on "unicorn case law in this [Circuit]," holding that "statutory damages (as opposed to actual damages) are unavailable where a defendant's first infringing act occurs before plaintiff has registered his copyright"), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (citation omitted); *see also, Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1012 (2d Cir. 1995) (Section 412 precludes an award of statutory damages and attorneys' fees "for any act of infringement commenced prior to the effective date of registration of the asserted copyright").

Here, Plaintiff alleges that Defendant's infringement of her photographs began in September 2021. However, Plaintiff did not register her photographs until January 2022. Thus, Plaintiff is precluded from recovering statutory damages and attorneys' fees (as opposed to actual damages and infringer's profits) as those forms of remedies are unavailable to her. Accordingly, those claims are hereby dismissed. *Goswami v. Sweet Reason US Co.*, 24-CV-948 (DLI) (MMH), 2025 WL 917831, at *3 (E.D.N.Y. Mar. 25, 2025) (dismissing claims for statutory damages and attorneys' fees for alleged infringement commencing before registration); *May v. Sony Music Ent.*, 399 F. Supp.3d 169, 174 (S.D.N.Y. 2019) (same); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996) (same).

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted in part and denied in part. Defendant's motion to dismiss Plaintiff's copyright infringement claim is denied, and Defendant's motion to dismiss the claims for statutory damages and attorneys' fees for infringement occurring prior to January 2022, the date of copywriter registration of the photographs, is granted.

**SO ORDERED.**

/s/
ORELIA E. MERCHANT
United States District Judge

September 15, 2025
Brooklyn, New York